Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:      516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHUONG LE,<br><br>Plaintiff,<br><br>v.<br><br>NOBLE CORPORATION, ROBERT W. EIFLER, PATRICK J. BARTELS, JR., ALAN J. HIRSHBERG, ANN PICKARD, CHARLES SLEDGE, MELANIE M. TRENT, PAUL ARONZON, NOBLE FINCO LIMITED, NOBLE NEWCO SUB LIMITED, and THE DRILLING COMPANY OF 1972 A/S.<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20 (a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Phuong Le ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## **SUMMARY OF THE ACTION**

1.      Plaintiff brings this action against Noble Corporation ("Noble" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act")  as a result of efforts to sell the Company to The Drilling Company of 1972 A/S ("Maersk Drilling"), through merger vehicles Noble Finco Limited ("Topco") and Noble Newco Sub Limited ("Merger Sub" and together with Noble, the Board, TopCo and Maersk Drilling, the "Defendants") and

enjoin an upcoming stockholder vote on an all stock proposed transaction (the "Proposed Transaction").

2.        The terms of the Proposed Transaction were memorialized in a November 10, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").    Under the terms of the Merger Agreement, Noble and Maersk Drilling will merge into TopCo.    Pursuant to the terms of the Proposed Transaction, each outstanding Noble share and penny warrant will be converted into the right to receive one share of Topco, and each issued tranche 1, tranche 2 and tranche 3 warrant will be converted into a warrant to purchase one share of Topco. Additionally, Maersk Drilling shareholders may exchange each Maersk Drilling share for 1.6137 Topco shares, and will in lieu of their entitlement to certain Topco shares have the ability to elect cash consideration for up to USD 1,000 of their Maersk Drilling shares (payable in DKK), subject to an aggregate cash consideration cap of USD 50 million (excluding any cash paid for fractional shares). Pursuant to the terms of the business combination agreement, upon closing of the transaction, the Maersk Drilling shareholders and the Noble shareholders will each own approximately 50% of the outstanding shares of Topco. As a result, the Plaintiff's interests will be significantly diluted.

3.        Thereafter, on December 20, 2021, TopCo filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.        In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on December 20, 2021 with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Noble and Maersk Drilling,

provided by Noble and Maersk Drilling to the Board's financial advisor Ducera and DNB ASA ("DNB") and Maersk Drilling's financial advisor J.P. Morgan Securities plc ("J.P. Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by DNB and J.P. Morgan, if any, and provide to the Company and the Board.

5.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

6.      Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a Noble stockholder.

7.      Defendant Noble is a leading offshore drilling contractor for the oil and gas industry.  Noble is incorporated under the laws of the Cayman Islands and has its principal place of business at 13135 Dairy Ashford, Suite 800, Sugar Land, Texas, 77478.  Shares of Noble common stock are traded on the New York Stock Exchange under the symbol "NE."

8.      Defendant Robert W. Eifler ("Eifler") has been a Director of the Company at all relevant times.  In addition, Eifler as the Company's President and Chief Executive Officer ("CEO").

9.      Defendant Patrick J. Bartels, Jr. ("Bartels, Jr.") has been a director of the Company at all relevant times.

10.      Defendant Alan J. Hirshberg ("Hirshberg ") has been a director of the Company at all relevant times.

11.      Defendant Ann Pickard ("Pickard") has been a director of the Company at all relevant times.

12.      Defendant Charles Sledge ("Sledge") has been a director of the Company at all relevant times.

13.    Defendant Melanie M. Trent ("Trent") has been a director of the Company at all relevant times.

14.    Defendant Paul Aronzon ("Aronzon") has been a director of the Company at all relevant times.

15.    Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

16.    Defendant Maersk Drilling provides responsible drilling services to energy companies worldwide.  Maersk Drilling is headquartered in Denmark and its shares are traded on the Nasdaq First North Denmark under the symbol "DRLCO."

17.    Defendants TopCo and Merger Sub are wholly owned subsidiaries and sub-subsidiaries of Noble, respectively, created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

19.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21.     Noble, together with its subsidiaries, operates as an offshore drilling contractor for the oil and gas industry worldwide. The Company provides contract drilling services to the oil and gas industry through its fleet of mobile offshore drilling units. As of June 04, 2021, it operated a fleet of 24 offshore drilling units, which include 12 drillships and semisubmersibles, and 12 jackups. The Company was formerly known as Noble Holding Corporation plc. Noble was founded in 1921 and is headquartered in Sugar Land, Texas.

22.     On August 3, 2021, the Company reported positive financial results in its most recent Press Release before the Proposed Transaction for the Second Quarter 2021. For example, the Company reported milestones such as revenue for the second quarter of 2021 totaled $200 million compared to $159 million in the combined first quarter of 2021.

23.     Speaking on the results, Defendant CEO Eifler commented in the July 15, 2021 Press Release, "'I am pleased with the continued strong execution in the second quarter demonstrated by the entire Noble team. During the quarter, we delivered safety and uptime performance to our customers that is outstanding by any measure. Noble's achievements in the second quarter also validated our rationale behind the Pacific Drilling acquisition, which was announced in March and closed in April. Specifically, the team has already signed three contracts on legacy Pacific Drilling rigs and retired two of its stacked drillships. The integration of Pacific Drilling's fleet into Noble's operations is nearly complete and we are on track to deliver the identified synergies by the end of the third quarter this year, three months ahead of schedule. In addition, we successfully ramped up four Noble rigs and returned them to dayrate while also mobilizing the *Noble Sam Croft* to a new country and customer, all in the midst of Covid-related travel restrictions that continue to make logistics for our crews and equipment more difficult. These accomplishments reinforce my trust in Noble's people to manage significant operational challenges without compromising service or safety.'"

24.     The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Noble.  Clearly, this will come at the expense of the Noble shareholders who will be significantly diluted, thereby depriving Plaintiff and other public stockholders of the Company the opportunity to reap the full benefits of Noble's present and future success.

***The Flawed Sales Process***

25.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to purchase Sinclair by any means necessary irrespective of the dilutive effect on Company stockholder such an action would have.

26.     Primarily, the Registration Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares through the Proposed Transaction.

27.     Notably, the Registration Statement fails to indicate whether an independent committee of independent and disinterested board members was created to run the sales process on behalf of the Noble Board.

28.     In addition, the Registration Statement is also unclear as to the nature of any non-disclosure agreement entered into between Noble and any potentially interested third party, including Maersk Drilling, as part of the sales process, and if the terms of any such agreements differed from one another, and in what way, including the specific nature of any included standstill or "don't-ask-don't-waive" provisions contained therein.

29.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

30.     On November 10, 2021, Noble and Maersk Drilling issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **Sugar Land and Copenhagen, 10 November 2021** – Noble Corporation (NYSE: NE) ("Noble") and The Drilling Company of 1972 A/S (CSE: DRLCO) ("Maersk Drilling") today announced that they have entered into a definitive business combination agreement to combine in a primarily all-stock transaction. Following the completion of the transaction, the Maersk Drilling shareholders and Noble shareholders will each own approximately 50% of the outstanding shares of the combined company. The combined company will be named Noble Corporation and its shares will be listed on the New York Stock Exchange ("NYSE") and Nasdaq Copenhagen.
>
> Noble and Maersk Drilling share a very strong conviction about the compelling industrial logic for taking this step to create a differentiated offshore drilling company with the scale, capabilities, and resources to successfully serve a broad range of customers. The combined company will have a modern, high-end fleet of floaters and jackup rigs across benign and harsh environments able to meet the needs of customers in the most attractive oil and gas basins. This transaction will unite and leverage the strong capabilities of Noble and Maersk Drilling, which both have decades of experience, differentiated value propositions, and unwavering commitments to best-in-class safety and service quality.
>
> The combination is expected to generate estimated annual run-rate synergies of USD 125 million, which will create significant value for shareholders. The combined company will benefit from a diverse revenue mix, a robust contract backlog with significant earnings visibility, a solid balance sheet, and a strong free cash flow potential, supporting the potential for return of capital to shareholders while providing resiliency through the cycle.
>
> The business combination agreement has been unanimously approved by the Boards of Directors of Noble and Maersk Drilling, and the transaction is also supported by Noble's top three shareholders, which collectively currently own approximately 53% of Noble shares, and APMH Invest A/S which currently owns approximately 42% of the share capital and votes of Maersk Drilling. In addition, certain foundations related to APMH Invest A/S, which currently own approximately 12% of the share capital and votes of Maersk Drilling, have expressed their intention to support the transaction.
>
> Maersk Drilling's Chairperson of the Board of Directors, Claus V. Hemmingsen, said: "This combination carries strong industry logic. With the combination we are creating a differentiated provider of offshore drilling services, which will be able to enhance the customer experience through increased scale, global reach, and

industry-leading innovation. The combination will create value for all shareholders and will offer investors a unique opportunity to benefit from the market recovery, a robust financial position and strong free cash flow potential, all paving the way for the potential return of capital to shareholders."

Noble's Chairperson of the Board of Directors, Charles M. (Chuck) Sledge, said: "The combination of Noble and Maersk Drilling will create a leading offshore driller with global scale, a strong balance sheet and significant free cash flow generation potential. The transaction will be accretive to free cash flow per share, and I am confident that this combination will deliver meaningful value to all shareholders."

Strategic rationale

The combination of Noble and Maersk Drilling is underpinned by a compelling strategic rationale for all stakeholders:

Creating a world class offshore driller: The combined company will benefit from a modern, high-end fleet comprising of 20 floaters and 19 jackup rigs across benign and harsh environments, which will serve a broad portfolio of high quality, blue-chip customers.

Enhancing the customer experience: The combination will bring together two complementary cultures with an unwavering commitment to best-in class safety performance and customer satisfaction. The combined company will be a leader and first-mover in innovation and sustainability.

Accretive to all shareholders: The realization of the potential annual cost synergies of USD 125 million is expected to be front-loaded with the full potential to be realized within two years after closing of the transaction. The synergies are expected to be accretive to free cash flow per share. The combined company's scale will significantly enhance its cost-competitiveness.

Platform for strong cash flow generation and distribution: The combined company is expected to have a normalized free cash flow potential of up to USD 375 million in 2023 and onwards with a highly attractive free cash flow yield potential, and additional cash flow growth stemming from the recovery of the international offshore drilling market. The balance sheet of the combined company will be best-in class with low net leverage and strong liquidity including a combined cash balance of approximately USD 900 million, providing resiliency through the cycle and allowing the combined company to focus on implementing a sustainable return of capital policy for shareholders.

Pro-forma financials

In the last twelve months ended September 2021, Noble and Maersk Drilling had combined pro-forma revenue of approximately USD 2.1 billion. As of 30 September 2021 (pro-forma for the asset divestitures announced by Noble and Maersk Drilling), the companies had a combined cash balance of approximately USD 900 million resulting in net debt of approximately USD 600 million with no newbuild capex commitments. As of 30 September 2021, the companies had revenue backlog of USD 2.4 billion (pro-forma for the asset divestitures).

Leadership team

Upon the closing of the transaction, Robert W. Eifler, Noble's President and Chief Executive Officer, will become President and Chief Executive Officer of the combined company and will be a member of the Board of Directors.

Commenting on the transaction, Robert W. Eifler stated, "Both Noble and Maersk Drilling have many decades of history as leaders in the offshore drilling industry. I look forward to the future as these two great organizations come together to create a stronger combined company. Our shared passion for safety and operational performance will drive better service for our customers while delivering better potential returns to our investors."

The combined company will have a seven-member Board of Directors with balanced representation from Noble and Maersk Drilling. Initially, the Board of Directors will be comprised of three directors designated by Noble, three directors designated by Maersk Drilling, and Robert W. Eifler. Charles M. (Chuck) Sledge will become chairman of the Board of Directors jointly appointed by Noble and Maersk Drilling. Claus V. Hemmingsen will be one of the three directors designated by Maersk Drilling.

The combined company will be headquartered in Houston, Texas, and will maintain a significant operating presence in Stavanger, Norway, to retain proximity to customers and support operations in the Norwegian sector and the broader North Sea, and to ensure continued access to talent.

Transaction terms and structure

The transaction will be implemented by way of (i) a merger of Noble with and into a wholly owned subsidiary of Noble Finco Limited, a private limited company formed under the laws of England and Wales and an indirect, wholly owned subsidiary of Noble ("Topco"), and (ii) a Danish voluntary tender exchange offer

by Topco to Maersk Drilling shareholders. In connection with the merger, (x) each outstanding Noble share and penny warrant will be converted into the right to receive one share of Topco, and (y) each issued tranche 1, tranche 2 and tranche 3 warrant will be converted into a warrant to purchase one share of Topco.

Additionally, pursuant to the exchange offer, Maersk Drilling shareholders may exchange each Maersk Drilling share for 1.6137 Topco shares, and will in lieu of their entitlement to certain Topco shares have the ability to elect cash consideration for up to USD 1,000 of their Maersk Drilling shares (payable in DKK), subject to an aggregate cash consideration cap of USD 50 million (excluding any cash paid for fractional shares). Pursuant to the terms of the business combination agreement, upon closing of the transaction, the Maersk Drilling shareholders and the Noble shareholders will each own approximately 50% of the outstanding shares of Topco, and those shares will be listed on both the NYSE and Nasdaq Copenhagen. The approximate 50% ownership percentage of the Maersk Drilling and Noble shareholders is calculated using 66.6 million shares for Noble shareholders (which includes approximately 6.5 million penny warrants and excludes dilution from outstanding warrant tranches and share based compensation plans) and assumes that all Maersk Drilling shares are tendered in the exchange offer for shares.

The transaction is subject to Noble shareholder approval, acceptance of the exchange offer by holders of at least 80% of Maersk Drilling shares, merger clearance and other regulatory approvals, listing on the NYSE and Nasdaq Copenhagen, and other customary conditions. The transaction is targeted to close in mid-2022.

### *The Materially Misleading and/or Incomplete Registration Statement*

31.     On December 20, 2021, the Noble Board and Maersk Drilling caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

32.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.  Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

b.  Specific information regarding whether a committee of independent and disinterested Company board members was created to run the process, and if not, the specific reasons why;

c.  Whether any confidentiality agreements entered into by the Company with Maersk Drilling differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Maersk Drilling, would fall away;

e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Noble and Maersk Drilling Financial Projections*

33.     The Registration Statement fails to provide material information concerning financial projections for Noble and Maersk Drilling provided to and relied upon by DNB and J.P. Morgan in their analyses.  The Registration Statement discloses financial projections for the Company which are materially misleading

34.     The Registration Statement should have, but fails to provide, certain information in the projections for Noble and Maersk Drilling that were provided to the Board, DNB, and J.P. Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

35.     With respect to Noble Case A, Noble Case B, Noble Projections: Maersk Drilling Case A, and Noble Projections: Maersk Drilling Case B projections provided, the Registration Statement fails to disclose material line items for the following metrics:

> a.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income (loss) from continuing operations; income taxes; interest income and other, net; gain (loss) on extinguishment of debt, net; interest expense, net of amounts capitalized; loss on impairment; reorganization items, net; certain corporate legal expenses and depreciation and amortization expense; and
>
> b.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: capital expenditures, cash taxes, any changes in net working capital, stock based compensation and proceeds from the sale of assets (including Noble's recent transaction with

ADES International Holding or Maersk Drilling's recent transaction with Havila Sirius, as applicable).

36.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

37.     In addition, while the Registration Statement provides projection data prepared by Noble management for both Noble and Maersk Drilling, it fails to provide the same as prepared by Maersk Drilling management, despite such missing information being the basis of the financial analyses performed by J.P. Morgan.  Such information must be provided.

38.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of DNB and J.P. Morgan's financial analyses or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by DNB*

39.     In the Registration Statement, DNB describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

40.     With respect to the *Noble - Publicly Traded Company Valuation Analysis*, the Registration Statement fails to disclose the following:

a.   The specific metrics for each selected public company analyzed; and

  b. The specific inputs and assumptions used to determine the selected reference range of range of $102 million to $160 million implied value per 7G equivalent unit on a backlog adjusted basis as applied to Noble's 7G equivalent rigs;

  c. The specific estimated value of Noble's remaining value of firm contract backlog as of September 30, 2021 utilized;

  d. The sale proceeds received from Noble's recent transaction with ADES International Holding utilized;

  e. Noble's net debt as of September 30, 2021 utilized; and

  f. The specific dilution from warrants utilized.

41. With respect to the ***Noble – Useful Life Discounted Cash Flow Analysis***, the Registration Statement fails to disclose the following:

  a. The net present value of projected unlevered free cash flows generated by Noble's fleet of rigs from October 1, 2021 through the end of their useful lives as estimated by the management of Noble;

  b. The specific inputs and assumptions used to determine the utilized discount rate range of 9.5% to 11.5%;

  c. Noble's estimated weighted average cost of capital utilized;

  d. Noble's net debt as of September 30, 2021 utilized; and

  e. The specific dilution from warrants utilized.

42. With respect to the ***Noble – 5-Year Discounted Cash Flow Analysis***, the Registration Statement fails to disclose the following:

  a. The net present value of projected unlevered free cash flows for the fourth quarter of Noble's fiscal year 2021 through Noble's fiscal year 2026;

  b. The specific terminal values calculated;

  c. The specific inputs and assumptions used to determine the utilized exit adjusted EBITDA multiple range of 5.0x to 7.0x;

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.5% to 11.5%; and

    e.   Noble's estimated weighted average cost of capital utilized.

43.    With respect to the ***Maersk Drilling - Publicly Traded Company Valuation Analysis***, the Registration Statement fails to disclose the following:

    a.   The specific metrics for each selected public company analyzed; and

    b.   The specific inputs and assumptions used to determine the selected reference range of range of $102 million to $160 million implied value per 7G equivalent unit on a backlog adjusted basis as applied to Maersk Drilling's 7G equivalent rigs;

    c.   The specific estimated value of Maersk Drilling's remaining value of firm contract backlog as of September 30, 2021 utilized;

    d.   The sale proceeds received from Maersk Drilling recent transaction with Havila Sirius utilized; and

    e.   Maersk Drilling's net debt as of September 30, 2021 utilized.

44.    With respect to the ***Maersk Drilling – Useful Life Discounted Cash Flow Analysis***, the Registration Statement fails to disclose the following:

    a.   The net present value of projected unlevered free cash flows generated by Maersk Drilling's fleet of rigs from October 1, 2021 through the end of their useful lives as estimated by the management of Noble;

    b.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.5% to 11.5%;

    c.   Maersk Drilling's estimated weighted average cost of capital utilized; and

    d.   Maersk Drilling's net debt as of September 30, 2021 utilized.

45.    With respect to the ***Maersk Drilling – 5-Year Discounted Cash Flow Analysis***, the Registration Statement fails to disclose the following:

    a.   net present value of projected unlevered free cash flows for the fourth quarter of Maersk Drilling's fiscal year 2021 through Maersk Drilling's fiscal year 2026;

    b.   The specific terminal values calculated;

    c.   The specific inputs and assumptions used to determine the utilized exit adjusted EBITDA multiple range of 5.0x to 7.0x;

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.5% to 11.5%; and

    e.   Maersk Drilling's estimated weighted average cost of capital utilized.

46.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

47.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Noble stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

48.    In the Registration Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

49.    As an initial matter, J.P. Morgan describes financial projections prepared by Maersk Drilling management both for Maersk Drilling and for Noble upon which J.P. Morgan

relied but which were not provided in the Registration Statement. Such information must be provided.

50.     With respect to the ***Discounted Cash Flow Analysis***, the Registration Statement fails to disclose the following:

> a.  The specific inputs and assumptions used to determine the utilized discount rate range of 9.1% to 11.1%;
>
> b.  Noble's estimated weighted average cost of capital utilized;
>
> c.  Maersk Drilling's estimated weighted average cost of capital utilized;
>
> d.  The specific net debt and other adjustments for Noble as of June 30, 2021 utilized;
>
> e.  The specific net debt and other adjustments for Maersk Drilling as of June 30, 2021 utilized;
>
> f.  The specific inputs and assumptions used to determine the utilized LT EBITDA Margins range of 37.5% to 42.5%;
>
> g.  The specific inputs and assumptions used to determine the utilized discount rate of 10.1% for Maersk Drilling;
>
> h.  The specific inputs and assumptions used to determine the utilized midpoint of the discount rates ranging for 9.0% to 11.0% for Noble;

51.     With respect to the ***Discounted Cash Flow-Based Value Creation Analysis***, the Registration Statement fails to disclose the following:

> a.  The estimated value of the Synergies utilized.

52.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's

determination that the Proposed Transaction is in her best interests as a public Noble stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

54.     Plaintiff repeats all previous allegations as if set forth in full herein.

55.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

56.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any

statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

61.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

64.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Noble's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

66.     The Individual Defendants acted as controlling persons of Noble within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Noble to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Noble and all of its

employees.  As alleged above, Noble is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 13, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*